Joseph H. Fagundes, Esq. #95264
Thomas M. Gray, Esq. #265212
CASSEL MALM FAGUNDES
6 El Dorado South, Suite 315
Stockton, CA  95202
Telephone: (209) 870-7900
Fax: (209) 870-7922

Attorneys for Plaintiffs
GREGORY K. TUCKER and REBECCA
TUCKER

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GREGORY K. TUCKER and REBECCA TUCKER, | Case No. C 11-03086 YGR |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN BOZIC, M.D.** |
| vs. | |
| WRIGHT MEDICAL TECHNOLOGY, INC., WRIGHT MEDICAL GROUP, INC., and DOES 1 through 100, inclusive, | Date:   January 15, 2013<br>Time:  2:00 p.m.<br>Action Filed: May 6, 2011<br>Trial Date: April 1, 2013 |
| Defendants. | |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF KEVIN J.
BOZIC, M.D.

00099892.WPD

1

**TABLE OF CONTENTS**

2

3  I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5  III.  DR. BOZIC IS QUALIFIED TO PROVIDE OPINIONS REGARDING
       THE EFFECT OF PLAINTIFF'S ALCOHOL USE ON THE FAILED HIP
6      IMPLANT AND DR. BOZIC'S OPINIONS ARE RELIABLE AND
       RELEVANT UNDER FRE 702 AND *DAUBERT* . . . . . . . . . . . . . . . . . . . . . . . . . . 3
7

8          A.  Dr. Bozic is qualified to provide opinion testimony concerning
               Mr. Tucker alcohol use and the effect on hip implants because he is the
               treating orthopeadic surgeon for Mr. Tucker and has extensive
9              experience in research and performing total hip arthroplasties, as well as the
               determining the causes of fractures in hip implants . . . . . . . . . . . . . . . . . . . . . 4
10

11         B.  Dr. Bozic's testimony as expert witness and treating physician
               regarding the alcohol use by Mr. Tucker is relevant to the case and
               supported by the facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
12

13  IV.  DR. BOZIC'S CASE REPORTS ARE RELIABLE, ARE RELEVANT,
       SUPPORT DR. BOZIC'S OPINIONS, ARE REPORTS PRODUCED
14     BY DR. BOZIC'S RESEARCH GROUP AND ARE RELIED UPON
       BY DEFENDANT'S OWN EXPERTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
15

   V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16

17

18

19

20

21

22

23

24

25

26

27

28

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA  95202
(209) 870-7900

1

## TABLE OF AUTHORITIES

2

3 **Case Authority:**

4 *Boyd v. San Francisco,*
        576 F.3d 938, 945 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
5

6 *Cano v. Cont'l Airlines, Inc.,*
        193 F. App'x 664 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7 *Casey v. Ohio Medical Products,*
        877 F. Supp. 1380 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
8

9 *Daubert v. Merrell Dow Pharm.,*
        509 U.S. 579, 589 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 11
10

11 *Domingo v. T.K.,*
        289 F.3d 600 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

12 *Hickman v. Sofamor-Danek Group,*
        1999 U.S. Dist LEXIS 4384 (N.D. Cal. 1999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
13

14 *Kennedy v. Collagen Corp.,*
        161 F.3d 1126 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 *Kuhmo Tire Co. v. Carmichael,*
        526 U.S.137, 141 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
16

17 *Madrigal v. Mendoza,*
        639 F. Supp. 2d 1026 (D. Ariz. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

18 *Morin v. U.S.,*
        534 F. Supp. 2d 1179 (D. Nev. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
19

20 **Statutory Authority:**

21 Federal Rules of Evidence 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 11

22

23

24

25

26

27

28

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA  95202
(209) 870-7900

## I.   INTRODUCTION

Defendant Wright Medical Technology ("Wright") has filed a motion to exclude the opinion testimony of Dr. Bozic regarding two specific opinions contained in the Dr. Bozic's rebuttal report: (1) opinions related to complications experienced by patients with total hip replacement, who also abuse alcohol; and (2) opinions regarding the impact of Mr. Tucker's alcohol abuse. Additionally, Wright Medical is moving to exclude case reports included with Dr. Bozic's original report.

Wright Medical is not challenging any other opinions held by Dr. Bozic and any objections they have under FRE 702 and *Daubert* are waived.

## II.   STATEMENT OF FACTS

Dr. Kevin Bozic is the treating physician for the Plaintiff Gregory K. Tucker and has been since 2003. (Bozic Decl. ¶2, Ex. B) Dr. Bozic is a well-known orthopedic surgeon and is Professor and Vice Chair at the University of California, San Francisco, Department of Orthopaedic Surgery and Core Faculty Philip R. Lee Institute for Health Policy Studies. (Bozic Decl. ¶1, Ex. A.) Dr. Bozic also has a background in biomechanical engineering and an M.B.A. from the Harvard Business School. (*Id.*) In addition to his training, Dr. Bozic participates in clinical research and has had 87 peer reviewed-manuscripts published regarding orthopedic surgery, with a significant amount discussing total hip arthroplasty. (*Id.*) Dr. Bozic has also contributed to numerous other manuscripts and textbooks, while also editing textbooks and journals. (*Id.*) Dr. Bozic also lectures on orthopedic surgery and total hip arthroplasty and has made numerous presentations at industry conventions and meetings. (*Id.*) Dr. Bozic's full qualifications and credentials are more fully described in his curriculm vitae, which is attached to his declaration submitted with this opposition. (*Id.*)

In 2003, Mr. Tucker was diagnosed with alcohol induced osteonecrosis of both hips. (Bozic Decl. ¶2, Ex. B: Report.) In November 2003, Mr. Tucker had a left hip hemi resurfacing arthroplasty. (Bozic Decl. ¶2, Ex. B: Report) In March 2006, Dr. Bozic performed the right total hip replacement on Mr. Tucker and used a Wright Medical ceramic-on-ceramic hip replacement using a Profemur Z modular hip stem and modular long neck. (Bozic Decl. ¶2, Ex B: Report; Gray Decl. ¶7.)

During the course of treatment of Mr. Tucker, Dr. Bozic was aware of Mr. Tucker's alcohol

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA  95202
(209) 870-7900

1  use and history. (Gray Decl. ¶16-18; Doc.No. 71: Defendant's Undisputed Fact No. 27.) The alcohol

2  use of Mr. Tucker was a factor of the patient history maintained at UCSF and relied upon by Dr.

3  Bozic. (Gray Decl.¶16-18; Bozic Decl ¶2, Ex. B: Rebuttal.)

4       On May 7, 2010, while Mr. Tucker was walking to his house, the modular neck

5  catastrophically fractured and Mr. Tucker collapsed. Mr. Tucker was taken to the emergency room

6  and x-rays confirmed a broken implant. A few days later, Mr. Tucker was seen in Dr. Bozic's office

7  to discuss the treatment alternatives. A revision surgery was recommend and on May 17, 2010, Dr.

8  Bozic performed the revision hip replacement through an extended throchanteric osteotomy

9  approach in order to remove the fracture hip stem. (Gray Decl ¶7; Bozic Decl. ¶2, Ex. B: Report.)

10  During this surgery, Dr. Bozic observed that the modular femoral neck had fractured at the modular

11  neck/femoral stem junction. (Bozic Decl. ¶2, Ex. B: Report.) There was no evidence of dislocation or

12  mechanical loosening. (Bozic Decl. ¶2, 6, Ex. B: Report and Rebuttal) The fracture was consistent

13  with similar failures that had been reported in the literature including case reports and research

14  performed by Dr. Bozic and his research group that were published in the Journal of Bone and Joint

15  Surgery. (Bozic Decl. ¶2, 8-11, Ex. B: Report.)

16       The Journal of Bone and Joint Surgery is a well known and peer reviewed journal. (Bozic

17  Decl. ¶10.) Defendant's experts, Dr. James and Dr. Ochoa, cite to Dr. Bozic's articles as well as

18  other articles published by the Journal of Bone and Joint Surgery. (Gray Decl. ¶12-13.)

19       On September 20, 2012, Plaintiffs disclosed and submitted the Report of Dr. Bozic. (Gray

20  Decl. ¶2; Bozic Decl. Ex B: Report) On October 3, 2012, Plaintiffs disclosed and submitted the

21  Rebuttal Report of Dr. Bozic. (Gray Decl. ¶3; Bozic Decl. Ex B: Rebuttal.) Pursuant to the Court's

22  scheduling order, expert discovery cut off was set for November 2, 2012. (Gray Decl. ¶4.) Plaintiffs'

23  counsel offered to arrange the deposition of Dr. Bozic. (Gray Decl. ¶5.) Defendant's counsel

24  declined to take the deposition of the treating physician, Dr. Bozic. (*Id.*) The expert discovery

25  deadline closed on November 2, 2012, and no deposition of Dr. Bozic was taken. (Gray Decl. ¶6.)

26  ///

27  ///

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF KEVIN J.
BOZIC, M.D.                    2                              00099892.WPD

III.   **DR. BOZIC IS QUALIFIED TO PROVIDE OPINIONS REGARDING THE EFFECT OF PLAINTIFF'S ALCOHOL USE ON THE FAILED HIP IMPLANT AND DR. BOZIC'S OPINIONS ARE RELIABLE AND RELEVANT UNDER FRE 702 AND *DAUBERT***

The Federal Rule of Evidence 702 provide that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles or methods; and (d) the expert has reliability applied the principles or methods to the facts of the case." In applying FRE 702, the court acts as a gatekeeper to ensure that the testimony is relevant and reliable. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993).

In *Daubert,* the Supreme court notes that the "inquiry envisioned by Rule 702 is a flexible one. Its overarching subject is the scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission. The focus, of course, is must be solely on principles and methodology, not on the conclusions they generate." (*Id.* at 594-95.) The traditional and appropriate means of attacking shaky but admissible evidence is through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. (*Id.* at 596.) This is echoed in the commentary to the 2000 Rule revision of FRE 702:

> When facts are in dispute, experts sometimes reach different conclusion based on competing versions of the facts. The emphasis ... on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other. Instead the court, as gatekeeper, examines qualifications, facts forming the basis for the expert's opinions. A party's disagreement with the opinion should instead be addressed with a thorough, cross-examination of the expert and the presentation of its own expert evidence.

(Fed. R. Civ. 702 advisory committee's note (2000).)

In making a determination, the court takes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." (*Boyd v. San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) *quoting Daubert*, 509 U.S. at 592-93). There are many factors that bear

1  on the inquiry. Some of the considerations deemed relevant by the Supreme Court include "(a)

2  whether the theory or technique can and has been tested; (b) whether the theory or technique has

3  been subjected to peer review and publication; (c) the known or potential rate of error for the

4  technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific

5  community." (*Boyd*, 576 F.3d at 945.) However as the court stated in *Daubert*, the "test of reliability

6  is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all

7  experts or in very case."(*Id. citing Kuhmo Tire Co. v. Carmichael*, 526 U.S.137, 141 (1999).)

8  In *Kennedy v. Collagen Corp.*, 161 F.3d 1126 (9th Cir. 1998), plaintiff brought suit against

9  Collagen for injuries suffered after injections of a Collagen product. The plaintiffs offered the

10  testimony of a rheumatologist Dr. Spindler. The district court excluded the expert's testimony, but

11  the 9th Circuit reversed. The court explained that a *Daubert* examination does a preliminary

12  assessment of the scientific validity of the reasoning or methodology. (*Id.* at 1128.) In forming his

13  opinions and writing his report, Dr. Spindler looked at relevant peer-reviewed articles, clinical trials,

14  government agency investigation reports, relevant records, laboratory tests, and examined the

15  plaintiff. (*Id.*) The court found that his "analogical reasoning was based on objective, verifiable

16  evidence and scientific methodology of the kind traditionally used by rheumatologists," and that was

17  exactly what *Daubert* requires. (*Id.* at 1230.)

**A.** **Dr. Bozic is qualified to provide opinion testimony concerning Mr. Tucker alcohol use and the effect on hip implants because he is the treating orthopeadic surgeon for Mr. Tucker and has extensive experience in research and performing total hip arthroplasties, as well as the determining the causes of fractures in hip implants**

Dr. Bozic is well-qualified to testify regarding the causation of the fracture and the effect Mr.

Tucker's alcohol may or may not have had on the fracture. Defendant's curriculum vitae attached

with Dr. Bozic's declaration, outlines his extensive experience, training, and knowledge regarding

total hip arthroplasties. Wright Medical does not dispute Dr. Bozic's qualifications, but promotes

them. In defendant's statement of material facts they describe Dr. Bozic as "an experienced surgeon

and a biomechancial engineer." Further stating that:

he has written extensively on hip implants and has authored at least one study on the

impact of patient weight on implanted hip replacements. He authored or co-authored numerous studies on total hip arthroplasty, including studies that consider the impact of patient weight on implant success. His 85 page CV indicates he has written and lectured extensively on hip arthroscopy, including UCSF Medical School lectures in "Total Hip Arthroplasty: Indications, Techniques, and Results" (October 2003), "Principles of Total Hip Arthroplasty (March 2004), and "Pre-operative templating for Total Hip Arthroplasty" (April, 2006).

(Doc. No. 71 - Defendant's Separate Stmt. Material Facts No. 48.) The defendants are not disputing

that Dr. Bozic has extensive experience with regards to total hip arthroplasties.

Dr. Bozic has also conducted numerous studies and published numerous articles, including

the study of fractures of the Profemur hip prosthesis in heavy individuals. One such case study is

"Corrosion-Induced Fracture of a Double-Modular Hip Prosthesis" (June 2010).

As the treating physician for Mr. Tucker, Dr. Bozic had to consider Mr. Tucker's health

history and physically examine Mr. Tucker. Additionally, Dr. Bozic discussed Mr. Tucker's alcohol

use with Mr. Tucker's primary physician and other treating physicians.

Wright Medical reliance on *Morin v. U.S.*, 534 F. Supp. 2d 1179 (D. Nev. 2005) and

*Hickman v. Sofamor-Danek Group*, 1999 U.S. Dist LEXIS 4384 (N.D. Cal. 1999) (Gray Decl. ¶15.)

is misplaced. While, *Morin* and *Hickman* both exclude experts based on qualifications, they don't

apply here. In *Morin*, the doctor was opining on the causation of cancer from exposure to jet fuel.

The court found he did not have the expertise, did not perform research or studies, and did not

publish any articles. (*Morin*, 534 F. Supp. 2d at 1185.) In *Hickman*, the experts were attempting to

establish causation between pain and a spinal implant. The court in excluding the testimony stated

that the excluded expert formed the opinions for the purpose of litigation, was not trained in

orthopedics, had no experience with spinal surgery, did not lecture or publish articles on these issues,

did not examine the patient, and relied solely on a review of the medical records. (*Hickman*, 1999

U.S. Dist LEXIS 4384 at 24-26.)

Our case is distinguishable from *Morin* and *Hickman*. The effect of alcohol use on the hip

implant, is part of the larger issue of the causation of the fracture in Mr. Tucker's hip implant. Dr.

Bozic has personally been treating Mr. Tucker since 2003 regarding the alcohol-induced

osteonecrosis in Mr. Tucker's hips. (Bozic Decl. ¶2, Ex. B: Report and Rebuttal.) Dr. Bozic

1   performed the right total hip arthroplasty in 2006 and after the fracture of the device, performed the

2   revision surgery in 2010. Dr. Bozic is a well-known orthopedic surgeon, who has conducted

3   numerous studies and written numerous publications on total hip arthroplasties that are subject to

4   peer review. (Bozic Decl. Ex. A.) Dr. Bozic has performed thousands of total hip arthroplasties

5   where the patients history must be considered. Dr. Bozic has a background in biomechanical

6   engineering. (*Id.*) Dr. Bozic lectures on total hip arthroplasties. (*Id.*) Dr. Bozic's research has

7   specifically studied the fractures of the Profemur hip prosthesis system, which used the long neck, in

8   larger heavier patients. (*Id.*, Ex. B.) Mr. Tucker is a larger heavier patient, who was implanted with a

9   Profemur hip prosthesis system with a long neck. Dr. Bozic's conclusion of the causation of the

10  fracture was formed during the revision surgery in 2010 and was not produced for the purposes of

11  litigation. (Bozic Decl. Ex. B.) Dr. Bozic concluded that the fracture was caused by fretting,

12  corrosion and metal fatigue. (Bozic Decl. Ex B.; Gray Decl.¶A.) All of these factors distinguish Dr.

13  Bozic's opinion from *Morin* and *Hickman*.

14      Finally, defendant relies on *Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002) in its discussion of

15  expert qualifications. This case does not discuss qualifications of an expert, but discusses the studies

16  relied upon by the expert. (*Id.*) The studies there were animal studies, which have no application to

17  any of Dr. Bozic's opinions, as he did not rely upon any animal studies.

18      Dr. Bozic is qualified under the standards of FRE 702 and *Daubert* to provide testimony

19  regarding the effects of alcohol use by Mr. Tucker on his implant. Beyond Dr. Bozic's experience

20  and training is the specific research Dr. Bozic has conducted into the fractures of the Profemur Hip

21  Prothesis and the conclusions reached while treating Mr. Tucker. These opinions were not formed

22  for the purposes of litigation, but, rather, as the treating surgeon who had to do the repair.

23  **B.      Dr. Bozic's testimony as expert witness and treating physician regarding the**
24  **alcohol use by Mr. Tucker is relevant to the case and supported by the facts.**

25      Dr. Bozic's opinions are supported by relevant facts and literature. Dr. Bozic's opinions are

26  based on his personal treatment of Mr. Tucker, his review of the medical records, the research he has

27  conducted, as well as his interpretation of relevant published literature. (Bozic Decl. Ex. B) In the

28

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF KEVIN J.
BOZIC, M.D.                            6                            00099892.WPD

1  particular case, of the opinions of alcohol use in his rebuttal report, his opinions also included Dr.

2  Ochoa's report and the cited materials contained on Pages 22-24 of Dr. Ochoa's report. (Bozic Decl.

3  Ex. B: Rebuttal.)

4      Dr. Bozic has been the treating physician of Mr. Tucker since 2003. Dr. Bozic is a well-

5  known orthopedic surgeon with a background in biomechanical engineering that has conducted

6  numerous studies and published numerous articles regarding total hip arthroplasties. Mr. Tucker was

7  diagnosed with alcohol-induced ostenecrosis in both hips. Dr. Bozic was aware of Mr. Tucker's

8  alcohol use and the medical records support that Mr. Tucker had a history of alcohol abuse. In

9  treating Mr. Tucker, the patients history was a factor in the available options for Mr. Tucker's

10  ostenecrosis. Dr. Bozic independently from litigation has specifically studied fractures of the long

11  neck of the Profemur Hip Prosthesis in larger heavier patients. (Gray Decl. ¶7, 19.; Bozic Decl. Ex

12  B.) Dr. Bozic has published these findings in a peer reviewed medical journal cited to by experts

13  from both sides. (Gray Decl. ¶12-14; Bozic Decl. Ex B.)

14      The issue regarding the effect of alcohol use on the hip prosthesis in Mr. Tucker is relevant to

15  this case. Wright Medical is making an issue of Mr. Tucker's alcohol use. Wright Medical's expert,

16  Dr. Ochoa, discusses the effect of alcohol abuse on hip replacements in his report dated August 31,

17  2012. (Gray Decl. ¶11.) Dr. Ochoa, however, only provides a general discussion of the complications

18  that occur in patients with a history of alcohol abuse, which includes dislocation, mechanical

19  loosening and noncompliance with postoperative rehabilitation protocols. (*Id.*) Dr. Bozic's opinion

20  in his rebuttal report provides a combination of expert witness and treating physician knowledge to

21  connect the generally known complications to the facts in of our case. In its full context, Dr. Bozic

22  states:

23

24      Dr. Ochoa correctly notes that Mr. Tucker had a history of alcohol abuse, which was
       the likely cause for the osteonecrosis of his hips that subsequently resulted in the need
25      for bilateral total hip replacement. He also notes that patients with alcohol abuse have
       higher complication rates following total hip arthroplasty. However, specifically in
26      this case, the alcohol abuse is what led to the need for the hip replacement in the first
       place. *The complications that are reported in total hip replacement patients with*
27      *alcohol abuse are higher incidence of dislocation and mechanical loosening of the*
       *prosthesis due to non compliance with postoperative rehabilitation protocols.* In this
28      case, Mr. Tucker had no restrictions placed on him postoperatively in terms of his

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF KEVIN J.
BOZIC, M.D.                                    7                                    00099892.WPD

activities and did not suffer a dislocation or mechanical loosening of the prosthesis. Specifically, he suffered a failure of the prosthesis at the modular neck, which is unrelated to his alcohol abuse or anything to do with his compliance with post-operative rehabilitation.

(Bozic Rebuttal ¶3.) Dr. Bozic find that none of the generally known complications are present in this case, as Mr. Tucker did not have dislocation, mechanical loosening, or issues with compliance regarding post-operative rehabilitation. (Bozic Decl. Ex B; Gray Decl. ¶8.)

In addition, during Dr. Bozic's revision surgery, he found a fractured long neck, that showed signs of fretting, corrosion and metal fatigue that was similar to his independently conducted research and published material. (Bozic Decl. Ex B.) Fretting, corrosion, and metal fatigue are not recognized complications of alcohol abuse by patients. (Gray Decl. ¶11.) Dr. Bozic has provided a conclusion based on his experience, training, independent research on the fractures of the Profemur Hip Prothesis, research on total hip arthroplasty, relevant medical literature, peer reviewed publications, and personal treatment of Mr. Tucker that Mr. Tucker's alcohol abuse is not related to the fracture of modular neck.

Dr. Bozic's opinion is supported by the facts and is relevant to the issue of causation in this case. As such, Dr. Bozic should be allowed to testify regarding Mr. Tucker's alcohol use and the absence of any connection tot he fracture of the hip implant.

**IV.    DR. BOZIC'S CASE REPORTS ARE RELIABLE, ARE RELEVANT, SUPPORT DR. BOZIC'S OPINIONS, ARE REPORTS PRODUCED BY DR. BOZIC'S RESEARCH GROUP AND ARE RELIED UPON BY DEFENDANT'S OWN EXPERTS**

First, Defendant alleges that the case studies provided by Dr. Bozic to support his opinions are not proper epidemiological studies. Defendant mistakenly relies on *Casey v. Ohio Medical Products*, 877 F. Supp. 1380 (N.D. Cal. 1995) to support their argument. The *Casey* court stated that they first needed to address, "whether the offered expert opinion grew out of research which the expert had conducted independent of the litigation, or whether the opinion was developed for the express purpose of testifying." (*Id.* at 1384.) The court found the research was not performed by the expert, he had not previously written on the subject, nor was his opinion based upon any specific case studies in which he participated. (*Id.*) Since the work was not based on the experts own studies,

1    but the work of others, the court looked to see if the opinion was based upon scientifically valid

2    principles and methodology to show that the conclusions have been subject to scientific scrutiny

3    through publications and peer review. (*Id.* at 1384-85.) The court decided to exclude because the

4    study relied upon was not subject to peer review. (*Id.*)

5         Our case is distinguishable from *Casey*. Dr. Bozic is a well-qualified orthopedic surgeon with

6    a biomechanical background. He participates in several studies and has published numerous articles

7    in peer reviewed medical journals. His research, articles, and lecturing focus on orthopedic surgery,

8    total hip arthroplasty and total knee arthroplasty. (Bozic Decl. Ex. A.) More specifically, Dr. Bozic

9    has researched the fractures in long necks of the Profemur Hip Prosthesis system and the fretting,

10   corrosion and metal fatigue that has been seen. The case reports relied upon by Dr. Bozic are the

11   product of Dr. Bozic's own work and they evaluate and investigate fractures of the modular neck and

12   the double modular Profemur Z Stem within heavy patients. The case reports are based on fractures

13   that occurred in 2008 and 2009, which is before Mr. Tucker's fracture. (Gray Decl. ¶9-10.) The

14   articles were published in The Journal of Bone and Joint Surgery, which is well-known and peer-

15   reviewed medical journal. (Bozic Decl. ¶10.) The case reports were not prepared in preparation for

16   litigation and they contain research personally done by Dr. Bozic. In addition, Defendant's experts

17   Dr. Ochoa and Dr. James both cite to the articles as well as plaintiffs' expert, Mari Truman. (Gray

18   Decl. ¶12-14.) Defendant's also rely on the articles as the basis for their material fact number 9 in

19   their motion for summary judgment. (Doc. No. 71, Pg 3-4.)

20        Defendant then asserts that the studies do not provide the necessary support for Dr. Bozic's

21   opinions. Wright Medical relies on *Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002), which deals with

22   an expert's opinion that relied solely on animal studies. The court conceded that those studies, may

23   be allowed, but in the end excluded the testimony as the analytical support was lacking to allow for

24   the extrapolation from animals to humans. (*Id.* at 606.) Wright Medical's other two cases, *Cano v.*

25   *Cont'l Airlines, Inc.*, 193 F. App'x 664 (9th Cir. 2006) and *Madrigal v. Mendoza*, 639 F. Supp. 2d

26   1026 (D. Ariz. 2009) are distinguishable from our case. *Cano* and *Madrigal* excluded testimony of

27   experts where the literature was not peer reviewed and did not provide support for the expert's

28

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA 95202
(209) 870-7900

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF KEVIN J.
BOZIC, M.D.                                                    9                                              00099892.WPD

1   opinions.(*Id.*) However, these cases are not applicable.

2        The case reports cited by Dr. Bozic are the product of his own personal research and

3   knowledge. The case reports were published independent of litigation. (Bozic Decl. ¶11.) The case

4   reports were published in The Journal of Bone and Joint Surgery. Experts from both sides cite to the

5   articles as well as The Journal of Bone and Joint Surgery to support their opinions. Additionally, the

6   case reports provide support to Dr. Bozic's opinions regarding the causation of the fracture of the

7   long neck in Mr. Tucker and other larger heavier patients. His report states that:

8        "At the time of surgery, it was noted that the modular femoral neck had fractured at

9        the modular neck/femoral stem junction. This was consistent with similar failures that
    had been reported in the literature including a case report that was published by our

10       research group in the Journal of Bone and Joint Surgery in June 2010."

11  (Bozic Decl. Ex B. - Bozic Report ¶ 4.)

12       The case reports are similar to Mr. Tucker's case. They describe the evaluation of the double

13  modular Profemur Z Stem coupled with a long neck and the subsequent fracture of the neck. The

14  patients in both reports were tall (6' 6") and heavy (242 lbs and 340 lbs). Both case reports, also

15  discuss other reported fractures occurring at the base of the neck or flush with the stem and that the

16  fracture occurred by a process of fretting, corrosion and metal fatigue. Both studies came to the

17  conclusion that the implant fractured at the stem-neck junction and that the long neck and loads from

18  the patient's weight contributed to the fracture.

19       These case reports support Dr. Bozic's opinion that Mr. Tucker's fracture was of a similar

20  nature. Mr. Tucker is 6'3" and was 257 lbs at the time of implantation. His fracture was found to be

21  at the stem neck juncture and experts for both sides agree that the fracture was caused by fretting,

22  corrosion and metal fatigue. (Doc. No. 71: Defendant's Fact No. 60.)

23       Defendant's motion to exclude the case reports should be denied. The case reports include

24  Dr. Bozic's own research that was not produced in anticipation of litigation. The case reports were

25  published in a well known peer-reviewed medical journal. Experts from both sides cite to the articles

26  as well as other articles published by the Journal of Bone and Joint Surgery. Defendant cannot both

27  challenge the validity and reliability of the articles, while at the same time cite to and rely on those

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF KEVIN J.
BOZIC, M.D.               10                              00099892.WPD

1   same articles. Therefore, Wright Medical's motion to exclude the case reports should be denied.

2   **V.     CONCLUSION**

3         Wright Medical's motion to challenge Dr. Bozic's opinions regarding the effects of alcohol

4   use on the hip implant and the case reports relied on should be denied. Dr. Bozic is qualified under

5   the standards of FRE 702 and *Daubert*. Dr. Bozic's opinion is based on his experience, training, first

6   hand knowledge of Mr. Tucker's medical history, knowledge of Mr. Tucker's alcohol use, relevant

7   medical literature, independent research on total hip arthroplasty, independent research on fractures

8   in the long neck of the Profemur Hip Prosthesis, and Dr. Ochoa's report and cited literature.

9   Additionally, the case reports are reliable, published in a peer reviewed medical journal, part of Dr.

10  Bozic's own research efforts that was not produced in the anticipation of litigation, and the articles

11  are cited and relied upon by experts from both parties. Therefore, Wright Medical's motion should

12  be denied.

13  ///

14  Dated: December ___18___, 2012                CASSEL MALM FAGUNDES

15

16                                            By: _Joseph Fagundes_ BY THC
                                                  _____
17                                                Joseph H. Fagundes
                                                  Attorneys for Plaintiffs
18                                                GREGORY K. TUCKER and REBECCA
                                                  TUCKER
19

20

21

22

23

24

25

26

27

28

CASSEL MALM FAGUNDES
6 S. El Dorado St., Suite 315
Stockton, CA  95202
(209) 870-7900